BROWN MANUF'G Co. *v.* DEERE and others.

*(Circuit Court, N. D. Illinois.* August 4, 1884.)

PATENTS FOR INVENTIONS—COUPLINGS FOR CULTIVATORS—CLAIM 1 OF PATENT No. 190,816—PATENTABILITY—ANTICIPATION—INFRINGEMENT.

The first claim of letters patent No. 190,816, granted to William P. Brown, May 15, 1877, for an improvement in couplings for cultivators, construed, and *held,* that Brown's device was a patentable invention, not anticipated by Coonrod's patent of 1867, Stover's patent of 1870, or Haslup's patent of 1872, and was infringed by the device of defendant.

In Equity.
*A. W. Train* and *George H. Christy,* for complainant.
*West & Bond* and *Coburn & Thacher,* for defendant.

BLODGETT, J. The complainant in this case seeks an injunction and accounting against the defendant for the alleged infringement of the first claim of patent No. 190,816, granted to William P. Brown, May 15, 1877, for an improvement in couplings for cultivators. The patentee states:

"My invention relates to an improved form of coupling for fastening the forward ends of the beams of plows or gangs to the axle of a wheeled cultivator. The improvement consists in the particular construction and arrangement of a tube or pipe-box turning loosely upon the horizontal ends of the crank-axle, and connected through an adjustable stirrup or sleeve and bracket with a head having a long bearing at right angles to the pipe-box, to which head the forward ends of the plow-beams are bolted, while the pipe-box is provided with means for turning it against the gravity of the attached cultivators in the rear, whereby the said cultivators are manipulated with greater ease, as hereinafter more fully described."

The distinctive feature of this device, which is now brought to the attention of the court in this case, is the auxiliary power applied by means of the pipe-box and an arm projecting upward therefrom to

aid in lifting and manipulating the plows by means of a spring attached to the lever or arm, so as to utilize the force of the spring. It is obvious from an inspection of the device as exhibited by complainant's model that some other force may be substituted for the spring. The patentee suggests that this may be done by weights, or by utilizing the draft of the team for the desired purpose. By means of the pipe-box, which rorates loosely upon the horizontal portion of the crank-axle and tne stirrup rigidly attached thereto, with a vertical bolt connecting the ends of the plow-beams to this stirrup, and thereby connecting the plow to the axle, a vertical motion of the plow is secured, while by means of the bolt connecting the beams to the stirrup a horizontal motion is given. We have then a plow-beam carrying one or more cultivators attached to the axle of the carriage with a free lateral or horizontal and vertical motion. The plows thus geared to the axle would naturally drag heavily upon the ground, and it requires the exercise of considerable strength on the part of the operator or plowman to handle them, either to throw them out of the ground, raise them up when you wish to turn a corner, or travel from point to point, or even raise them slightly for the purpose of passing over an obstruction. The device in this case is intended to facilitate the raising of the plow for any of the purposes mentioned or desired, and to accomplish this result the arm, M, extends upward from the inner end of the pipe-box to a sufficient height to form a lever designed to rock or roll the pipe-box upon the axle, and the plow, being rigidly attached vertically to the pipe-box by the means described, the hind end is either wholly or partly lifted from the ground, thereby relieving the plowman of a material part of his labor.

The defendant is charged with infringing the first claim of the patent, which is—

"(1) The pipe-box provided with a projection adapted to co-operate with a spring, weight, or the draught, to rock the said pipe-box against or with the weight of the rear cultivators or plow, substantially as and for the purpose described."

In his specifications the patentee, as already suggested, intimates that the draught of the team may be utilized to either lift the plows in the same manner as they are lifted or partly lifted by the spring, or the same force may be applied to hold the plows down and cause them to run deeper into the ground, and this result he proposes to accomplish by providing another projection upon the pipe-box near the hub of the wheel, extending both above and below the center of the axle, which projection he designates as M'. This projection, M', is so arranged as to allow of applying some part of the draught-power of the team by hooking the draught-rod into the lower projection when it is wished to hold the plows down, and into the upper part of the arm, M', when it is desired to have the power operate against the gravity of the plow. Much discussion was had upon the hearing as to the construction to be given to this claim, the defendant's counsel

and experts contending with much ingenuity and acumen that the words "against or with the weight of the rear cultivators or plows" should be read "against and with the weight," etc. To my mind there is no ambiguity or uncertainty in this claim. This inventor thought at least that both the methods of utilizing the devices for rocking the pipe-box upon the axle were new, and he sought in this claim to cover, as it seems to me, both the arm, M, and the arm, M', for the purposes to which he intended to apply them. It is manifest to my mind that the projection adapted to co-operate with a spring, mentioned in the first and second lines of the claim, is the arm, M, and that in this claim, as well as in the specifications generally, when the patentee talks of a projection intended to co-operate with a spring or weight he has reference to the arm, M, which he specially designs for that purpose. He, however, wished to preserve the benefit of the projection, M', if it should be found practically useful, and hence made his claim comprehensive enough to cover that part of his invention. It is obvious that the arm, M, and spring, N, as shown in the drawings and model, can only operate to rock the pipe-box against the weight of the plow, or, in other words, to help lift the plows from the ground. It is equally obvious that by reversing the spring and attaching it to the rear of the arm, M, it would operate with the gravity of the plows and aid in holding the rear of the plows upon the ground; but the only suggestion made in the specifications of a mode for rocking the pipe-shaft backward, so as to hold the plows more firmly upon the ground, is by means of the arm, M', and there is nothing in the proof tending to show that this special device has been found useful or adopted in practice. It seems to me that whatever allusion there may be in this first claim to this arm or projection, M', may be considered as coming within the well-known maxim in pleading "*Utile per inutile non vitiatur*,"—that which is serviceable is not rendered invalid by that which is useless. Whatever part of this claim may be deemed to have reference to the projection, M', it seems to me is of no moment, for the purposes of this case, at least, for it is not claimed that defendants use this part of this claim or anything equivalent to it. The prominent feature of this device as described in this claim is the pipe-box, arm, M, and spring, to aid in lifting the rear of the plow, and the claim seems to me to sufficiently cover and clearly describe this portion of the device.

The defendant further insists that this first claim is void because the matter thereof is old, and had been anticipated in prior devices and patents upon the same subject. Without analyzing the characteristics and features of a large number of prior patents put into this case, several of which show some elements used in complainant's organization, it is sufficient to say that the Coonrod cultivator of December, 1867, and the Stover cultivator of November, 1870, both show pipe-boxes so working on an axle as a means by which a plow-beam is attached to the axle of a cultivator carriage so as to secure

vertical motion. It is conceded by the complainant that Brown substantially began where Stover left off,—that is, Stover had attached the end of his plow-beam to the axle through the instrumentality of a pipe-box, which rocked or worked upon the axle, thereby allowing a vertical tilting motion to the plow-beam; but I do not find in any of the numerous patents cited any suggestion of the peculiar auxiliary means of assistance for raising the rear of the plows out of the ground, such as is shown in Brown's device in this patent. It is also true that the Haslup patent of 1872 shows a pipe-box on the axle, with an arm or lever, O, extending upward from the pipe-box, by which the driver could raise the plows from the ground; but that was a riding cultivator, and the function of the lever was different from that of Brown's projection. So, also, it appears from the proofs that prior to the patent now under consideration one or more devices had been patented or put in public use for using a spring or other equivalent force to aid in raising the rear of the plows out of the ground; but the attachment for that purpose was made upon the beam or handle back of the joint where the plow was connected with the axle, and was practically of but little use, because, as the plows swayed out of the line of draught in either direction for the purpose of following a crooked row of plants, or of avoiding plants out of the line, or for the purpose of avoiding an obstruction, the spring worked against the strength of the plowman, and he was obliged, in order to change the direction of his plows, frequently to overcome the force of the spring, which became a serious objection in practical tilling. This patentee, however, applied the lifting lever by which the plows were raised out of the ground practically to the end of the plow-beam, because the projection, M, and the plow-beam being both for the purpose of vertical motion rigidly attached to the pipe-box, the rocking of the pipe-box by the projection or lever, M, tilted or lifted the rear of the plows without in any manner interfering with the side or horizontal action of the plows.

It is argued that the attachment of the lifting force to the end of the plow-beam by means of the lever, M, has in it nothing new or patentable, when we consider that the lifting force of the spring or weight had, before this inventors' present patent, been applied at a point behind the end of the beam; but this, it strikes me, is one of the cases where the change in the location of the lever makes this device a success where prior efforts in the same direction had been failures. The fact that not only the defendant in this case but other large manufacturers of cultivators have at once adopted, substantially, the same auxiliary lifting device shown in the complainant's patent, is evidence of the popular acceptance of this as the practical solution of many of the difficulties which had been encountered in the attempt to use the older devices, and is such a change and improvement as required more than mere mechanical skill, and brings this device fairly within the domain of the patent law.

I do not, therefore, find in the older devices anything which seems to me to have anticipated or suggested this device. The Stover device became known in 1870, and yet for nearly seven years afterwards no such step was made as is shown in complainant's patent. So, too, this same patentee, Brown, in 1872, instructed the world how to apply the lifting force of a spring or weight to aid in raising the rear of a plow by means of an attachment upon the body of the plow behind the coupling, but no one was instructed by either Stover or the Brown device of 1872 to apply the lifting force at the end of the plow by means of a lever projecting upward from the end of the beam; and the fact that these older devices, which it is now claimed were susceptible of being modified by mere mechanical skill into a machine in its operation and effect like that shown by the complainant's patent, rested without any such modification until the present patent was promulgated, is quite conclusive proof to me that it required something more than mere mechanical skill to produce what is shown in this patent. By the patent now under consideration the patentee made an improvement in advance of what he had done by his patent in 1872, and immediately upon the advantages of this later device being exhibited to the public the defendant and other manufacturers have seized upon it as meeting a felt want, and assumed to appropriate it to their own use.

The defendant further contends that it does not infringe this patent; but I find in its device—*First*, the pipe-box adjusted to rock upon the horizontal portion of the axle; *second*, in all its essential elements of function and operation the stirrup by which the pipe-box is fixed to the end of plow-beam; and, *third*, the arm or projection, M, extending upward from the pipe-box so as to form a lever by which the pipe-box may be rocked upon the axle, and thereby aid in lifting the rear of the plow from the ground. I do not find in the defendants' structure the auxiliary or incidental projection, M', described in the complainant's patent, but, as I have already said, I do not think that the failure to use this portion of the complainant's device authorizes or makes it allowable to use what I deem the essential element of the complainant's patent,—the pipe-box mode of attaching it to the plow-beam and projection, M, or its equivalent.

I therefore find that the defendants infringe the first claim of the complainant's patent, and that the complainant is entitled to damages, and accounting therefor.